[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In 1989, Pitney Bowes, Inc., announced a workforce reduction program to its employees which offered them voluntary resignation or retirement with certain monetary incentives. The employee in this case opted into the program and was given a resignation date of February 16, 1990 and a designated retirement date of April 1, 1990. On January 4, 1990, the employee signed a "voluntary separation form" which obligated him to sign a release. On January 31, 1990, he signed two documents: the first was his "option election form" which entered him into the program, and the second was the form in which he agreed that as a "delayed departure employee" he would accrue no benefits after February 16, 1990, his designated resignation date. In fact, the employee extended his service to August 24 and actually received his severance pay shortly after February 16. The effect of this action was to postpone his actual departure from employment to August 24, 1990 so CT Page 845 that he could "wind down" the workload assigned to him.
The respondent board upheld the referee's award of benefits to the employee, ruling that the employee and employer entered into a new employment contract effective February 19, 1990, the first work day after the effective date of the resignation. The plaintiff/appellant challenges the ruling and urges the court to sustain the appeal on the grounds that the issue is one of law and not of fact. Whether there arose a new employment contract is a mixed question of law and fact. Hess v. Dumouchel Paper, Co.,154 Conn. 343, 347 (1966). The board's decision must stand if it results from a correct application of the law to the findings of fact and could reasonably follow from the findings, Robinson v. Unemployment Security Board of Review, 181 Conn. 1 (1980). The facts found are entitled to judicial deference, but the conclusion drawn from the board's application of the law to the facts is a matter peculiarly within the province of the court. See, United Parcel Service, Inc. v. Administrator, 209 Conn. 381 (1988).
The board's decision turns entirely on its finding that the employment period beginning February 19 and ending August 24 constituted a new employment contract. The decision was predicated entirely upon certain factual findings but lacks analysis or discussion of the legal principles which govern the creation of a new employment contract.
"Novation" is a substitution of a new contract for an old one which is thereby extinguished. 5 Williston, Contracts (3d Ed.) Jaeger (Sec. 1865). "A recognized test for whether a later agreement between the same parties to an earlier contract constitutes a substitute contract looks to the terms of the second contract. If it contains terms inconsistent with the former contract so that the two cannot stand together, it exhibits characteristics indicating a substitute contract". Bushnell Plaza Development Corporation v. Fazzano, 38 Conn. Sup. 683, 688 (1983).
While the principles of novation apply generally, this is an employment contract which is governed by a special body of law. Section 31-222 (c)(1) defines employment as "any service . . . performed under any expressed or implied contract of hire creating the relationship of employer-employee". The board's finding that a new contract was created is predicated upon the following facts:
 1. "Two weeks before his scheduled departure the claimant was told that his job was considered critical and was CT Page 846 asked to stay on and continue working after his resignation". As to this finding the board failed to find the undisputed fact that the employee was given this information on the very same day (January 31, 1990) that he submitted his option election form so that he knew at the time he opted into the program that he was being asked to delay his departure.
 2. "The employer testified that he had no ongoing obligation to the claimant after February 16". This is nothing more than a reaffirmation of the employer's right to terminate an at will employee for any reason it wishes as long as the reason does not violate public policy. Magnan v. Anaconda Industries, Inc., 193 Conn. 558 (1984).
 3. "Shortly after February 16, while the claimant was working under the new contract, the employer paid the claimant the severance and vacation pay to which he was entitled by virtue of his resignation". Severance pay is a form of compensation for the termination of the employment relationship. McGowan v. Administrator, 153 Conn. 691 (1966). The board has attached unwarranted legal significance to this fact. The payment clearly was made in recognition of the employee's termination as a permanent employee but not as an acknowledgment that the relationship had ended for all purposes because the employee was still doing the same job when the payment was made.
 4. "The claimant's new contract of employment specifically provided that the claimant would not earn any vacation or pension credits, or benefits which the claimant had received under his original contract of employment".
 5. "By virtue of his employment from February 19, 1991 (sic) to August 24, 1990, the claimant earned more than ten times his weekly benefit rate".
Assuming the validity of findings number 4 and 5, this court is unpersuaded that all five findings form the basis of a new contract. Applying the statutory definition of employment, it becomes apparent that no new employment relationship was created on February 19. On this date, the employer/employee relationship already existed; only the duration and compensation changed. Everything else remained the same. Both time periods were at will CT Page 847 in nature; the employee was still paid wages at the same intervals; he performed the same tasks, worked in the same place and at the same machine. The record does not indicate that his hours were any different. The fact that he received different compensation and no benefits does not make the new relationship a new employment contract. See, Pierson v. Administrator, 21 Conn. Sup. 144, 148
(1958).
Moreover, and perhaps most important, the employer's ability to control the manner in which the employee performed remained unchanged. The existence or non existence of the right to control the means or method of work is a fundamental factor upon which the employment relationship depends. Beaverdale Memorial Park v. Danaher, 127 Conn. 175, 179 (1940). The February to August period of employment represents a different and final phase of the employee's service. The employee did not sever the relationship and then re-establish it.
The court concludes that the board acted illegally in ruling as it did and thus the appeal is sustained.
MOTTOLESE, J.